IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MICK HAIG PRODUCTIONS, e.K., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-1900-N |
| | § | |
| DOES 1-670, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

This Order addresses Defendants Does 1-670's (the "Does") motion for sanctions or, alternatively, attorneys' fees [10]. Because the Court finds that Evan Stone ("Stone"), counsel for Plaintiff Mick Haig Productions, e.K., ("Mick Haig") issued subpoenas in violation of court order, the Court grants the Does' motion and requires Stone to pay sanctions of $10,000, together with other remedial steps.[1]

**I. ORIGINS OF THE DOES' SANCTIONS MOTION**

This copyright infringement case began unusually, and it ends unauspiciously – at least for Stone. Mick Haig, a German producer and distributer of pornographic films, filed suit against the Does on September 21, 2010. *See* Compl. [1]. In short, Mick Haig alleged that the Does participated in online file-sharing of its film *Der Gute Onkel* ("The Good Uncle") through the use of BitTorrent protocol technology. Although Mick Haig had obtained the Does' Internet Protocol ("IP") addresses and the date and time each Doe

---

[1]The Court further orders that the Clerk of the Court unseal Mick Haig's response to the Does' motion for sanctions [12].

ORDER – PAGE 1

allegedly engaged in infringing activity, the Does' "true names" remained unknown at the time of filing. *Id.* at 3. In order "to obtain the true identities and contact information of the [Does] from their internet service providers," ("ISPs") Mick Haig asked the Court for leave to take discovery prior to the customary Rule 26 conference and to authorize the issuance of Rule 45 subpoenas to the ISPs. *See* Mick Haig's Mot. for Leave to Take Discovery Prior to Rule 26(f) Conference (the "Discovery Motion") at 1 [2]; Discovery Mot. Mem. at 2 [2-2].

The Court declined to rule on Mick Haig's motion and instead ordered the Does' ISPs "to preserve existing activity records for each [IP] address . . . pending resolution of the Discovery Motion." Order of Oct. 21, 2010 (the "ISP Order") [3]. Specifically, the ISPs were "to retain activity records only for the specific date and time logged for each IP address, and then only to the extent necessary to identify each Doe defendant's name, address, telephone number, e-mail address, and Media Access Control address." *Id.* Mick Haig represented that it needed that particular information to identify the Does. Discovery Mot. Mem. at 2. The Court directed Stone to serve a copy of the ISP Order on each ISP identified in the Discovery Motion.[2]

Although somewhat unusual, Mick Haig's request was not unprecedented. Indeed, it closely resembled motions filed in similar lawsuits brought by other members of the entertainment industry to combat online file-sharing. *See, e.g.*, Genan Zilkha, *The RIAA's Troubling Solution to File-Sharing*, 20 FORDHAM INTELL. PROP. MEDIA & ENT. L.J. 667

---

[2]Bresnan Communications, Charter Communications, Clearwire Corporation, Comcast Cable, Cox Communications, EarthLink, Frontier Communications, Insight Communications Company, Qwest Communications, Sprint, Sprint PCS, Road Runner, Road Runner Business, Verizon Internet Services, WideOpenWest, and Windstream Communications.

ORDER – PAGE 2

(2010). As a common tactic, plaintiffs in file-sharing litigation routinely ask courts to authorize preconference discovery of unknown does' identities via subpoenas directed at ISPs. Once the plaintiffs obtain that information, they send the does demand letters, usually offering early settlement, as a prelude to formal litigation against the does as named defendants. *See, e.g., id.* at 683-90; *Maverick Recording Co. v. Harper*, 598 F.3d 193, 194-95 (5th Cir. 2010). In more than a few cases, the allegations against the does turn out to be false. *See, e.g.*, Eldar Haber, *The French Revolution 2.0: Copyright & the Three Strikes Policy*, 2 HARV. J. SPORTS & ENT. L. 297, 314 & n.85 (2011). File-sharing litigation has garnered significant attention over the past decade, even reaching the Supreme Court. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005). The similarity of this suit to other file-sharing cases was confirmed by the Court's review of over a dozen such cases filed by Stone in the Northern District that also sought preconference discovery. *See, e.g.*, Discovery Mot. Mem. at 2 & n.1 ("[C]ourts throughout the country have granted expedited discovery in . . . lawsuits similar to this one" (citing *Lucas Entm't, Inc. v. Does 1-65*, Civil Action No. 3:10-CV-1407-F (N.D. Tex. filed July 17, 2010) (Furgeson, J))).[3]

The Court subsequently followed its initial response to the Discovery Motion by appointing three attorneys ad litem (the "Ad Litems") to represent the Does. *See* Order of Oct. 25, 2010 (the "Ad Litem Order") [4]. The Court appointed the Ad Litems in recognition

---

[3]*Lucas Entertainment*'s docket sheet reflects a classic file-sharing action against anonymous does. In that case, Stone requested, and was initially granted, permission to send subpoenas to several ISPs. He subsequently dismissed without explanation over a dozen does and personally named one doe defendant as a party to the suit, against whom he obtained an entry of default. Stone ultimately dismissed that case, too, after Judge Furgeson vacated his order authorizing preconference discovery, quashed all of Stone's subpoenas, and severed all defendants except the first doe.

ORDER – PAGE 3

that the Discovery Motion "concern[ed] matters that could materially affect the [Does'] interests." *Id.* Because the Does had yet to be identified, however, they could not defend those interests. *Id.* Accordingly, the Court ordered the Ad Litems to respond to the Discovery Motion no later than November 24, 2010.

The Ad Litems responded to the Discovery Motion as ordered. *See* Ad Litems' Obj. [5]. Among other things, the response strongly called into question the Court's jurisdiction over the vast majority of the Does, *see* Schoen Decl. & Ex. 1 [5-3 & 5-4],[4] as well as the propriety of Mick Haig's mass-joinder of hundreds of defendants into one suit. Mick Haig untimely filed a three-page reply in mid-December. *See* Mick Haig's Resp. to Opp. (the "Discovery Motion Reply") [7].

Before the Court could issue an order on the Discovery Motion, Mick Haig dismissed this case with prejudice on January 28, 2011 [9]. Although the ISP Order required the Does' ISPs to preserve Mick Haig's sought-after information, Mick Haig justified the dismissal by arguing that it had "lost any meaningful opportunity to pursue justice in this matter" because there was "little chance of discovery in sight." Notice of Dismissal at 2. Mick Haig also complained of the Court's appointing ad litems "renowned for defending internet piracy" rather than unspecified local counsel, the purported inadequacy and irrelevancy of the Ad Litems' seventy-one page Objection to the Discovery Motion, and the Ad Litems' ostensible

---

[4]Shoen used reverse domain name service lookup to obtain the alleged Does' geographic locations based on the IP addresses and associated ISPs provided by Mick Haig. That process traced only about three dozen of the 670 IP addresses to Texas.

ORDER – PAGE 4

failure "to engage [Stone] in a discovery conference" or to "provide[] . . . alternatives for [Mick Haig] to cure the harm inflicted on it by [the Does]."[5] *Id.* at 1-2.

In early February, the Ad Litems provided a potential explanation for Mick Haig's peculiar dismissal when they filed the instant motion for sanctions: Stone issued subpoenas to the Does' ISPs even though the Court had yet to rule on the Discovery Motion. The Ad Litems learned of Stone's actions after an alleged Doe contacted them with questions regarding a subpoena issued by Stone to Comcast Cable seeking the Doe's contact information. *See* Levy Aff. and accompanying Exhibits [10-2]. A representative from Verizon later contacted the Ad Litems concerning subpoenas Stone sent to that ISP. *See* Zimmerman Aff. [10-3]. Stone failed to respond to the Does' motion for sanctions.

In light of Stone's silence, the Court granted the Does preliminary relief on certain requests for information. The Court gave Stone two weeks "to disclose all actions taken by him in connection with issuing subpoenas, including but not limited to the disclosure of: (1) any communications with or materials produced by any [ISP]; (2) any issued subpoena and accompanying documents; (3) any communications with the Defendant Does or their representatives, excluding the [Ad Litems]; (4) any communications concerning settlement; (5) any funds received from or on behalf of any Doe Defendant." Order of Apr. 1, 2011 (the "Disclosure Order") [11]. Stone finally filed a three-page response (the "Disclosure Order Response"), but did so *ex parte* rather than sealed, as the Court had directed [12].

---

[5]This contradicted Mick Haig's argument – made over a month and a half after the Ad Litems' appointment – that the Court should grant the Discovery Motion because of "the outright impossibility of scheduling a discovery conference with persons unknown to the Plaintiff." Discovery Mot. Reply at 1.

ORDER – PAGE 5

As a result, the Ad Litems neither received Stone's response nor saw that it had been entered on the case's docket sheet. After the Ad Litems learned of Stone's response, they requested an extension of time to file their reply, which the Court granted [13 & 14]. The Ad Litems filed their reply in early June, and this matter finally became ripe for consideration.

## II. STONE ISSUED UNAUTHORIZED SUBPOENAS

The record amply supports significant monetary sanctions under Rules 26 and 45 based on Stone's issuing subpoenas in direct contravention of the ISP Order.

### *A. Guiding Principles for Rule 26 and 45 Sanctions*

"The district courts wield their various sanction powers at their broad discretion." *Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir. 1993) (collecting cases). Because attorneys use subpoenas to further discovery, sanctions in the subpoena context often implicate the sanction provisions in both Rules 26 and 45. *See* FED R. CIV. P. 26(g) (discovery-related sanctions); 45(c) (subpoena-related sanctions); *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994) (looking to Rule 45 in overbroad subpoena case because Rule 26(c) provision at issue expressly invoked sanction authority of Rule 37); *see also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 386 (7th Cir. 2008) (noting that Rule 26 "factors are equally applicable to considering the imposition of sanctions" under Rule 45); *In re Byrd, Inc.*, 927 F.2d 1135, 1137 (10th Cir. 1991) (affirming sanctions ordered under Rule 26(g) for issuing invalid subpoenas). The Court draws on both Rules here because Stone sought early discovery from the ISPs via subpoenas.

Under Rule 26, "every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name." FED. R. CIV. P. 26(g)(1). When affixed to discovery requests, an attorney's signature "certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry . . . [the request] is:

> (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
> (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
> (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

FED. R. CIV. P. 26(g)(1)(B). "If a certification violates this rule without *substantial* justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." FED. R. CIV. P. 26(g)(3) (emphasis added).

Attorneys derive the authority to issue subpoenas from their status as court officers. Thus, "lawyer-issued subpoenas [are] mandates of the [issuing] court." FED. R. CIV. P. 45 1991 advisory committee's notes (citations omitted). With this power comes "increased responsibility and liability for [its] misuse." *Id.*; *see also Theofel v. Farey-Jones*, 359 F.3d 1066, 1074 (9th Cir. 2004) ("The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused."). Indeed, the magnitude of the public trust vested with attorneys in this regard is so great that some jurisdictions recognize causes of action for abuse of subpoena and

ORDER – PAGE 7

malicious prosecution.  *See, e.g., RRR Farms, Ltd. v. Am. Horse Protection Ass'n*, 957 S.W.2d 121, 133-34 (Tex. App. – Houston [14th Dist.] 1997, pet. den.).  Under Rule 45, "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  The issuing court must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply."  FED. R. CIV. P. 45(c)(1).

### B. Stone's Conduct Merits Sanctions

Stone grossly abused his subpoena power.  "A party may not seek discovery from *any source* before the parties have conferred as required by Rule 26(f), except . . . when authorized by these rules, by stipulation, or by court order."  FED. R. CIV. P. 26(d)(1) (emphasis added).  In apparent homage to this rule, Mick Haig filed the Discovery Motion.  Although Stone viewed this step as a "mere procedural formality," Discovery Mot. Reply at 1, this Court explicitly disagreed.

The ISP Order did not grant the Discovery Motion; the word "grant" appears nowhere on its face.  To make that clear, the Court provided that the Order "addresse[d] matters related to" the Discovery Motion.  ISP Order at 1.  The ISP Order also acknowledged Mick Haig's concern that the ISPs might discard the sought-after information while the Court considered the Discovery Motion by ordering the ISPs to preserve that information "*pending resolution* of the Discovery Motion."  *Id.* (emphasis added).  The Court further allowed the affected ISPs a thirty-day window "to respond to the Discovery Motion, if they desire[d] to

ORDER – PAGE 8

do so." *Id.* The Court therefore finds that Stone could not have reasonably interpreted the language of the ISP Order's one substantive page as granting the Discovery Motion.

He nonetheless issued subpoenas bearing his signature to the ISPs the very next day. *See* Disclosure Order Resp. Exs. (subpoenas dated October 22, 2010). Rule 26, however, "oblige[d] [Stone] to stop and think about the legitimacy of [his] discovery request" and whether it was consistent with the Rules and "reasonable under the precedents or a good faith belief as to what should be the law." FED. R. CIV. P. 26(g) & 1983 advisory committee's notes. This standard requires only that Stone have acted objectively reasonable under the circumstances. *Id*; *see also Theofel*, 359 F.3d at 1074 (noting that a subpoena's issuer is "charged with knowledge of its invalidity" because he "'ought to have known in the exercise of reasonable care' of the mistake" (quoting PROSSER & KEETON ON THE LAW OF TORTS § 18 at 119 (5th ed. 1984))). A cursory review of the ISP Order would have revealed that any subpoena issued prior to the Court's ruling on the Discovery Motion would constitute a discovery request inconsistent with Rule 26(d)'s prediscovery conference requirement. *Cf. In re Byrd*, 927 F.2d at 1137 ("The inquiry is whether, with reasonable investigation, the bank could have believed such an order [to enforce invalid subpoenas] was proper. We agree . . . that it could not. There is no dispute that the subpoenas served on Smith were not valid . . . . Counsel must, or should, have known this when they reviewed the subpoenas.").

Stone's decision to issue the unauthorized subpoenas also runs afoul of Rule 45's provisions for "Protecting a Person Subject to a Subpoena." FED. R. CIV. P. 45(c). By serving invalid subpoenas, Stone necessarily "impos[ed] an undue burden or expense" on

each ISP and the putative Does. FED. R. CIV. P. 45(c)(1). Stone acknowledges that four ISPs processed and acted on the subpoenas, including sending Stone some of the Does' identifying information.[6] *See* Disclosure Order Resp. at 2. Several Does responded to subpoenas issued to their ISPs. *See* Levy Aff. & Ex. 3. And, almost unbelievably, Stone used the information he received to contact an unknown number of potential Does, *see* Disclosure Order Resp. at 3, presumably in the form of demand letters and settlement offers like the example Stone provided to the Court and, as the Ad Litems argue, described in various public statements.[7] *See* Discovery Mot. Reply Ex. (second demand letter Stone sent to a doe in another Northern District case noting that the doe had previously been sent a letter detailing "the claims against [him] and a reasonable settlement offer" and extending "a second offer to settle, in the amount of $2,500") [7-1].

To say that the subpoenas imposed an undue burden on their targets fails to capture the gravity of Stone's abdication of responsibility: Because Stone obtained information that he had no right to receive, "[t]he subpoena[s'] falsity transformed the access [of the Does'

---

[6]Stone demanded that most ISPs respond by November 23 or December 1, 2010. Two subpoenas, however, had later deadlines of December 8th and 23rd.

[7]*See, e.g.*, Ad Litems' Obj. at 20-22.
[Stone] has not been shy about telling the press that he expects to get settlements precisely because many people who download pornography are unwilling to risk being publicly identified as having done so. For example, he told the *Texas Lawyer*, "You have people that might be OK purchasing music off iTunes, but they're not OK letting their wife know that they are purchasing pornography." Consequently, he bragged, once they are identified, "Most people just call in to settle. We have a 45 percent settlement rate."
*Id.* at 21 (internal citation omitted) (quoting John Council, *Adult Film Company's Suit Shows Texas Is Good for Copyright Cases*, TEXAS LAWYER (Oct. 4, 2010)).

information] from a bona fide state-sanctioned inspection into private snooping." *Theofel*, 359 F.3d at 1073 (citations omitted). The law, moreover, presumes that Stone "had at least constructive knowledge of the subpoena[s'] invalidity. [The subpoenas were] not merely technically deficient, nor . . . borderline case[s] over which reasonable legal minds might disagree. [They] transparently and egregiously violated the Federal Rules, and [Stone] acted in bad faith and with gross negligence in drafting and deploying [them]." *Id.* at 1074 (footnote and internal quotation marks omitted). "To knowingly abuse [the subpoena] power is an affront to the fair and impartial administration of justice and is subject to sanctions under the inherent power of the court," *In re Air Crash at Charlotte, N.C.*, 982 F. Supp. 1092, 1101 (D.S.C. 1997), and the Federal Rules. Stone's wanton abuse continued until the eve of dismissal. *See* Disclosure Order Resp. at 2 (reporting that Verizon contacted Stone on January 26, 2011, to demand the return of a CD containing identifying information that Verizon had previously sent to Stone).[8] Accordingly, the Court finds that Stone's conduct merits severe sanctions under Rules 26 and 45.[9]

---

[8]The Court takes judicial notice that Stone has improperly issued subpoenas in other cases. *See, e.g.*, Order Granting Motion to Quash [8], in *In re Subpoena to Time Warner Cable*, Civil Action No. 3:11-MC-41-F (N.D. Tex. filed Mar. 31, 2011) (Furgeson, J.). In that case, Judge Furgeson quashed a subpoena sent by Stone to Time Warner Cable seeking identifying information for over 200 does. Stone sent the subpoena over a month after Judge Furgeson vacated his order allowing Stone to send subpoenas and severed all but the first doe defendant. More egregiously, Stone issued the subpoena on the *same day* that he voluntarily dismissed the underlying case, *FUNimation Entm't v. Doe 1*, 3:11-CV-147-F (N.D. Tex. filed Jan. 24, 2011) (Furgeson, J.).

[9]The Court also finds relevant the nonexclusive factors to consider in sanctioning misconduct under Rule 11:
   [w]hether the improper conduct was willful, or negligent; whether it was part
   of a pattern of activity, or an isolated event; whether it infected the entire

To summarize the staggering chutzpah involved in this case: Stone asked the Court to authorize sending subpoenas to the ISPs. The Court said "not yet." Stone sent the subpoenas anyway. The Court appointed the Ad Litems to argue whether Stone could send the subpoenas. Stone argued that the Court should allow him to – even though he had already done so – and eventually dismissed the case ostensibly because the Court was taking too long to make a decision.[10] All the while, Stone was receiving identifying information and communicating with some Does, likely about settlement. The Court rarely has encountered a more textbook example of conduct deserving of sanctions.

### III. STONE PROVIDES SUBSTANCELESS EXPLANATIONS FOR HIS ACTIONS

Stone mentions several unavailing defenses in his brief Disclosure Order Response. Stone first argues that he could have issued subpoenas under a provision of the Copyright Act "without judicial oversight." Disclosure Order Resp. at 1 (citing 17 U.S.C. § 512(h)). He also contends that the subpoenas were innocuous because they "requested nothing more

---

pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants . . . .

FED. R. CIV. P. 11 1993 advisory committee's notes. Although the Ad Litems have not moved under Rule 11, the Court finds that these factors also militate in favor of the sanctions assessed against Stone.

[10]Stone's representation to the Court that it should grant his motion so he could serve subpoenas, when in fact he had already done so, treads perilously close to violating a lawyer's duty of candor to the Court. *See* TEX. DISC. R. PROF'L CONDUCT 3.03(a)(1) ("A lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal.").

than identifying information of the [ISPs'] account holders," *id.*, distinguishing such individuals from alleged Does. According to Stone, these two arguments render "Defendants' claims of harm . . . without merit, thus making disciplinary action improper." *Id.*

This Court deals in facts, not counterfactuals. Maybe Stone could have issued subpoenas under section 512(h).[11] But, he didn't. Instead, he filed the Discovery Motion asking the Court to authorize discovery on the ISPs prior to the normally mandatory Rule 26(f) conference. Maybe the Court would have granted the Discovery Motion had Stone waited for a ruling. But, he didn't. Instead Stone took matters into his own hands and then dismissed this case after he got caught. Whether section 512(h) might have allowed Stone access to the information he acquired impermissibly has no bearing on the Court's decision to impose sanctions. That decision turns on whether Stone engaged in misconduct. He did, egregiously.[12]

Second, Stone contends that when the Court appointed the Ad Litems it "robbed [Mick Haig] of [the] opportunity [to engage in a Rule 26(f) conference] altogether by ordering [the Ad Litems] to oppose [Mick Haig's] discovery efforts, *ab initio*." Disclosure Order Resp. at 2. "By depriving [Mick Haig] the opportunity to proceed with discovery in

---

[11]The Court makes no statement on the merits of this argument.

[12]Stone's belief that his actions caused no or only *de minimis* harm is simply wrong. The subpoenas imposed costs and burdens on the ISPs and the Does that they would never have incurred if the Court had denied the Discovery Motion. The subpoenas also wreaked a substantial, unauthorized invasion of the Does' privacy. *See Theofel*, 359 F.3d at 1073-75.

a normal fashion, [Stone] asserts that it would be highly irregular to then sanction [him] for doing so." *Id.*

This argument also fails. Discovery proceeds in "normal fashion" according to the Rules of Civil Procedure. They provide that no discovery of any kind takes place prior to a Rule 26(f) conference unless the Court orders otherwise. Although Stone might believe that motions like the Discovery Motion are mere formalities and that courts routinely grant them, that misapprehension provides no basis for proceeding with preconference discovery without court order. The only "highly irregular" activity here is Stone's disregard of the Rules and the Court's orders, which would have constituted sanctionable conduct even if the Court eventually had granted the Discovery Motion.

The Court, moreover, appointed the Ad Litems to represent the Does' interests only through resolution of the Discovery Order. Because a Rule 26(f) conference and entry of a discovery plan could not have occurred before the Court ruled on the Discovery Motion, the Ad Litems had no authority to enter into any discovery plan. Regardless, Stone faced no impediment to seeking a conference with the Ad Litems if he truly desired one. Rule 26 makes "[t]he attorneys of record . . . jointly responsible for arranging the conference." FED. R. CIV. P. 26(f)(2). But, again, no matter how this hypothetical scenario might have turned out, it does not alter or mitigate Stone's misconduct.

In short, Stone provides no reasonable – let alone a substantial[13] – justification for his actions. The Court therefore finds that he deserves sanctions under Rules 26 and 45 for

---

[13]*See* FED. R. CIV. P. 26(g)(3).

issuing invalid subpoenas.  The Court also finds that a sanction of $10,000 sufficiently will deter similar misconduct and adequately reflects the gravity of the circumstances.

### IV. THE COURT ORDERS ADDITIONAL SANCTIONS

To make all interested parties to this action whole, the Court further orders the following additional sanctions:

1) Stone shall serve a copy of this Order on each ISP implicated and to every person or entity with whom he communicated for any purpose in these proceedings.

2) Stone shall file a copy of this Order in every currently-ongoing proceeding in which he represents a party, pending in any court in the United States, federal or state.

3) Stone shall disclose to the Court whether he received funds, either personally or on behalf of Mick Haig, and whether Mick Haig received funds for any reason from any person or entity associated with these proceedings, regardless of that person's status as a Doe Defendant or not, (excepting any fees or expenses paid by Mick Haig to Stone).

4) Stone shall pay the Ad Litems' attorneys' fees and expenses reasonably incurred in bringing the motion for sanctions. The Ad Litems shall file an affidavit or other proof of such fees and expenses with the Court within thirty (30) days of the date of this Order. Stone may contest such proof within seven (7) days of its filing.

Stone shall comply with these directives and supply the Court with written confirmation of his compliance no later than forty-five (45) days after the date of this Order.

### CONCLUSION

Stone requested that the Court approve preconference discovery aimed at identifying the Does. The Court instead ordered the ISPs to preserve Stone's desired information pending the Court's resolution of the Discovery Motion. Stone nonetheless issued subpoenas, obtained some Does' identifying information, and attempted to contact an

unknown number of Does, presumably to make settlement offers. The adage "it is easier to ask forgiveness than it is to get permission" has no place in the issuance of subpoenas. The Court therefore sanctions Stone in the amount of $10,000, to be paid into the Court's registry no later than thirty (30) days after the date of this Order, and imposes additional sanctions as set forth above.

Signed September 9, 2011.

_____
David C. Godbey
United States District Judge