IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| FUNIMATION ENTERTAINMENT A TEXAS LIMITED PARTNERSHIP, Plaintiff, v. DOES 1 – 1,427, Defendants. | § § § § § § § § § § § | CIVIL ACTION NO. 2:11-CV-00269 |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Anthony Clark's ("Clark") Motion to Dismiss for Improper Venue in a Copyright Infringement Case (Dkt. No. 38), filed September 17, 2012. The Court having fully considered the same finds that the motion should be **GRANTED** for the reasons set forth below.

**I.   BACKGROUND**

Plaintiff Funimation Entertainment produces, markets, and distributes motion pictures and other media in the United States. In this action, Plaintiff brought suit against 1,427 John Doe defendants, alleging infringement of its copyright in the film *The Legend Is Born: Ip Man*. Plaintiffs allege that the defendants, identified by their Internet Protocol (IP) addresses, used a computer peer-to-peer file sharing protocol known as BitTorrent to illegally download and distribute copies of the film to other BitTorrent users.

BitTorrent allows its users to download files more quickly and efficiently than its predecessor file sharing protocols. Rather than downloading files directly from centralized servers or individual users, BitTorrent allows users, or "peers" to split a file up into pieces and download multiple pieces simultaneously from multiple peers. Once a peer downloads a

particular piece of the file in question, he or she automatically begins to share that piece with other peers. These multivariate connections between downloading and uploading users create a "swarm," eventually allowing participating users to collect all pieces of a file and reassemble it into its final form. A peer who makes a complete file available to other peers is known as a "seed." As the name implies, each swarm begins with a seed; however, BitTorrent users often remain in a swarm after they have completed downloading a file, thus becoming seeds themselves.

BitTorrent peers are identified to each other only by their IP addresses. Though an IP address, without more, typically cannot be traced back with certainty to an individual user, Internet Service Providers can generally link an IP address to its account owner. Moreover, commonly available free web applications can often trace an IP address back to a general geographic area, such as a city or postal code. Thus, BitTorrent users are partially anonymous to each other. While peers' names and other identifying details are opaque, their IP addresses and (to some extent) their locations may be logged and tracked. Importantly, BitTorrent users do not typically *control* the peers to whom they connect—BitTorrent software connects to other peers in a swarm automatically, without any input from the user.

In May 2011, Plaintiff's "Infringement Specialist" allegedly observed an IP address associated with Clark in a BitTorrent swarm around Plaintiff's film. Plaintiff alleges that a computer at Clark's IP address, which was seeding the Plaintiff's film, made a direct connection to a computer with an IP address located in Longview, TX, at 10:01 PM on May 21, 2011. One other BitTorrent user in the May 2011 swarm appears to have been located in Longview, and one more in Lufkin, TX, though there is no evidence that Clark ever connected directly to these users. Longview and Lufkin are both located in the Eastern District of Texas. Apart from these

fleeting exchanges of data, Clark, a resident of Fort Worth, TX, has no connections to the Eastern District of Texas that are relevant to this case.

In the instant motion, Clark seeks to dismiss the suit against him for improper venue, as authorized by Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1400(a); in the alternative, he asks that venue be transferred to the Northern District of Texas, where he resides.

## II.   LEGAL STANDARDS

A defendant in a federal suit may request that the court dismiss a lawsuit for improper venue. Fed. R. Civ. P. 12(b)(3). Once a defendant raises the issue of proper venue by motion, the burden of sustaining venue lies with the plaintiff. *See Psarros v. Avior Shipping, Inc.*, 192 F. Supp. 2d 751, 753 (S.D. Tex. 2002). In the absence of an evidentiary hearing, a court should allow a plaintiff to carry this burden by setting forth facts, that when taken as true, establish venue. Although a defendant need not affirmatively disprove all bases for the plaintiff's venue choice, the court will nevertheless give plaintiff every benefit of the doubt in ascertaining what facts control its legal decision. *See id.* The court may, however, look outside of the complaint to consider undisputed facts. *See EnviroGlas Prods., Inc. v. EnviroGlas Prods., LLC*, 705 F. Supp. 2d 560, 567 (N.D. Tex. 2010).

Venue in copyright cases is governed by 28 U.S.C. § 1400(a), instead of the general venue provision of 28 U.S.C. § 1391. Section 1400(a) allows plaintiffs to bring suit for copyright infringement "in the district in which the defendant or his agent resides or may be found." Innumerable courts have held that a defendant "may be found" in any district in which he or she may be subject to personal jurisdiction, as analyzed as if the district were a separate state. *See, e.g.*, *Collins v. Doe*, No. H-10-2882, 2012 U.S. Dist. LEXIS 56492, at *8-9 (S.D. Tex. 2012). Though this formulation is expansive, we need not determine its accuracy here, since, as will be

seen below, Clark's Motion should be granted even assuming that venue and personal jurisdiction are coextensive.

A court may exercise personal jurisdiction over a nonresident defendant when two conditions are met. First, the forum state's long-arm statute must permit jurisdiction (Texas has made clear that its long-arm jurisdiction is coextensive with constitutional limits, *see American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801 (Tex. 2002)). Fed. R. Civ. P. 4(k)(1). Second, the exercise of jurisdiction must be legitimate under the Due Process Clause of the Fourteenth Amendment: "Where the plaintiff alleges specific jurisdiction . . . due process requires (1) minimum contacts by the defendant purposefully directed at the forum state, (2) a nexus between the defendant's contacts and the plaintiff's claims, and (3) that the exercise of jurisdiction over the defendant be fair and reasonable." *ITL Int'l, Inc. v. Constenla, S.A.*, 669 F.3d 493, 498 (5th Cir. 2012). Even "isolated and sporadic" contacts may support jurisdiction, given a sufficiently tight nexus to the claim, but the contacts may not be "'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person.'" *Id.* at 498-99 (quoting *Burger King Corp. v. Ridzewicz*, 471 U.S. 462, 475 (1985)). The ultimate inquiry is whether defendant has "'purposefully avail[ed]'" herself of "'the privilege of conducting activities within the forum,'" such that he or she "should reasonably anticipate being haled into court." *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

## III. ANALYSIS

Assuming that the standard for copyright venue is the same as the standard for personal jurisdiction, then, the question before the Court is whether Clark, by allegedly seeding Plaintiff's film from his home in the Northern District of Texas, made himself subject to the personal

4

jurisdiction of the Eastern District of Texas. Because Clark's contact with the Eastern District was not purposeful, but fortuitous, attenuated, and at the whim of a third party, this Court concludes that the minimum contacts standard is not satisfied.

There is no allegation that Clark purposefully directed his alleged dissemination of Plaintiff's film toward the Eastern District of Texas in particular; indeed, the log of Clark's alleged connections reveals that almost all of the users who may have downloaded from Clark reside outside of the Eastern District. Dkt. No. 39-2. Plaintiff argues, however, that Clark's alleged intent to share the file would suffice to support jurisdiction in *any* district to which he transmitted copyrighted material, and hangs its jurisdictional hat on a single connection to a user in Longview. Dkt. No. 39, at 5, 2. Plaintiff supports this interpretation of the "purposeful" requirement by analogizing to *Collins v. Doe*, 2012 U.S. Dist. LEXIS 56492 (S.D. Tex. 2012), a case in which the court found personal jurisdiction stemming from defendants' intentional distribution of an adult magazine in the district. But *Collins* fails to resolve the issue at hand— whether defendant must intend only to do an act, or to do it *in a specific place*—because the *Collins* court assumed that defendants intended to distribute their magazine in the Southern District. *Collins*, at *14.

As far as this Court is aware, every court to have squarely addressed this issue has held that BitTorrent users' random connections with peers are not sufficient contacts to support personal jurisdiction those peers' districts of residence. As one court put it:

> Because every user simultaneously receives and transfers information to the other users in the swarm, a participant in the swarm has no control over where he distributes the information; it is automatically distributed to the other users. Where the files get distributed to is controlled by the location of the other participants in the swarm, not by the distributor's conduct. For example, as in this case, if a New York resident participates in a BitTorrent swarm and a file gets distributed to California, it is not because the New York resident directed the file to California. It is because another person participating in the swarm happened to

be in California. Therefore, a participant in a BitTorrent swarm does not "directly target" California, even if he participates in a swarm that results in his files being downloaded to a computer in California.

*Liberty Media Holding, LLC v. Tabora*, 11-CV-651-IEG JMA, 2012 WL 28788 (S.D. Cal. Jan. 4, 2012) (citations omitted); *see also Nu Image, Inc. v. Does 1-23,322*, 799 F. Supp. 2d 34, 39 (D.D.C. 2011) ("Plaintiff will not be able to establish personal jurisdiction over putative defendants who reside outside the District of Columbia."); *Berlin Media Art e.k. v. Does 1-654*, 2001 WL 36383080 (N.D. Cal. Oct. 18, 2011) ("The Court is not aware of any caselaw that suggests that this Court has personal jurisdiction over all 654 Defendants simply because 'at least one' of the defendants (unidentified) allegedly happened to download the file at some point during the time period in question from a computer located in this District."); *Millenium TGA v. Doe*, 10-C-5603, 2011 WL 7444064 (N.D. Ill. Sept. 26, 2011) ("[S]imply because the Doe IP . . . participated in a swarm does not confer personal jurisdiction"); *DigiProtect USA Corp. v. Does*, 10-CIV.-8760 PAC, 2011 WL 4444666 (S.D.N.Y. Sept. 26, 2011) ("[T]he Court does not want to 'ensnar[e] unsophisticated individuals from around the country in a lawsuit based in New York,' who likely would be encouraged to settle rather than incur the burden and embarrassment of contesting the litigation.") (citing *DigiProtect v. Does 1-266*, 10-CIV-8759, 2011 WL 1366073, April 13, 2011); *On the Cheap, LLC. v. Does 1–5011*, 280 F.R.D. 500, 504-505 (N.D. Cal. 2011) ("The problem with this theory is that since plaintiff could have filed this lawsuit in any state, the logical extension would be that everybody who used P2P software such as BitTorrent would subject themselves to jurisdiction in every state. This is a far cry from the requirement that "there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State," which is the hallmark of specific jurisdiction."); *CP Productions, Inc. v. Does 1–300,* No. 10-C-6255, February 24, 2011, order, Dkt. # 32 (N.D. Ill.) ("[T]here is no justification for dragging into an Illinois federal court, on a

6

wholesale basis, a host of unnamed defendants over whom personal jurisdiction clearly does not exist.").

As these cases make clear, Clark's fleeting alleged contact with the Eastern District of Texas does not rise to the level of "purposeful availment" of its legal system. *See Burger King*, 471 U.S. at 475. There is no allegation that Clark had knowledge or control over the locations of his BitTorrent connections—to the contrary, there is every indication that his connections were, if not strictly "random," then at least "fortuitous" in the sense that circumstances beyond Clark's control or purpose dictated the location of his connections. *See id.* Importantly, chief among these circumstances is the location of other BitTorrent users seeking to download Plaintiff's film. Clark's connection to the district was thus not only fortuitous, but also at the mercy of the "unilateral activity of another party or third person." *See id.* (quoting *Helicopteros Nacionalies de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)). Finally, the nature of Clark's alleged conduct suggests that his connection with the Eastern District was "attenuated" in the extreme. *Id.* Clark allegedly seeded Plaintiff's file from his home in Fort Worth, transmitting pieces of the file to peers in dozens of locations around the country. Though electronic transmissions necessarily involve both an origin and an endpoint, the obvious predominant situs of Clark's infringing activity is Clark's residence, not the panoply of destinations to which Clark allegedly transmitted pieces of infringing files.[1]

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations." *Burger King*, 471 U.S. at 471-72 (quoting *International Shoe*, 326 U.S. at 319). The

---

[1] Obviously, a defendant need not be physically present in a forum state in order for personal jurisdiction to attach; a mail or electronic communication with the forum will support jurisdiction so long as the communication is "purposefully directed" toward the forum. *See Burger King*, 471 U.S. at 476. However, in this case, where transmission endpoints are indescriminately disbursed across the globe, it seems most reasonable to focus our attention on the sourceof the transmission rather than on the location of an individual projection eminating therefrom.

contacts requirement protects citizens from the arbitrary and unpredictable exercise of legal power:

> By requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

*Id.* (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring) and *World-Wide Volkswagen*, 444 U.S., at 297). If the Court were to accept Plaintiff's logic in this case, Clark would be legitimately subject to legal action, not merely in almost any District Court in the United States, but also in the courts of Canada, the United Kingdom, Norway, Sweden, Greece, Singapore, Morocco, the Phillipines, and Saudi Arabia.[2] This expansive jurisdictional spreading is precisely the reason the minimum contacts test remains vital today. Though modern communications may have made the physical boundaries of legal jurisdictions less important, the legal boundaries on state power remain as vital as ever. Clark, a resident of the Northern District of Texas, may always be sued in his home district; but in this case there is no supportable basis to try the case against him in the Eastern District of Texas.

Since Clark's alleged conduct does not satisfy the minimum contacts prong of the personal jurisdiction test, this Court need not inquire into whether jurisdiction would satisfy the requirements of traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S., at 476 (dividing the minimum contacts and substantial justice inquiries). Even assuming that the copyright venue provision of 28 U.S.C. § 1400(a) should be interpreted in parallel with the constitutional test for specific personal jurisdiction (with the district analyzed as if it were a

---

[2] Plaintiff helpfully left blank the locations of IP addresses apparently sourced in foreign countries, but a quick search of these addresses using web-based IP locator tools confirms alleged connections with each of these jurisdictions. *See* Dkt. No. 39-2.

separate state), Clark cannot be said to reside or "be found" within the Eastern District. Thus, venue in the Eastern District of Texas is improper and Clark's motion to dismiss should be granted.

## IV. CONCLUSION

Plaintiff brought suit in the Eastern District of Texas against 1,427 John Doe defendants, only three of whom seem to have been located within the physical territory of the district. Since neither Clark nor 1,424 of the Doe defendants are alleged to have acted with what amounts to "purposeful direction" of their activities toward the Eastern District of Texas, it would be both inconvenient and unfair to try Clark in this Court.

For the reasons stated herein, the Court finds that Defendant's Motion to Dismiss for Improper Venue should be and is hereby **GRANTED.** It is **ORDERED** that all claims against defendant Clark are dismissed without prejudice.

**So ORDERED and SIGNED this 16th day of September, 2013.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE